119 Cal.Rptr.2d 442 (2002)
98 Cal.App.4th 182
ROGER H. PROULX & COMPANY, Plaintiff and Appellant,
v.
CREST-LINERS, INC., et al., Defendants and Respondents.
No. B144733.
Court of Appeal, Second District, Division Five.
April 30, 2002.
As Modified on Denial of Rehearing May 28, 2002.
Review Denied July 17, 2002.
*444 Greene, Broillet, Taylor, Wheeler & Panish, Bruce A. Broillet, Scott H. Carr; Esner & Chang, Stuart B. Esner, Los Angeles, for Plaintiff and Appellant Roger H. Proulx & Company.
Horvitz & Levy, Mitchell C. Tilner, Peter Abrahams, Encino; Lewis, D'Amato, Brisbois & Bisgaard, Gordon J. Calhoun, Robert L. Slaughter, III, Los Angeles, for Defendant and Respondent J & H Marsh & McLennan of Utah, Inc.
*443 MOSK, J.

INTRODUCTION
Roger H. Proulx & Company (Proulx) appeals from a summary judgment entered in favor of J & H Marsh & McLennan of Utah, Inc. (J & H). Proulx, a licensed contractor, sued J & H, an insurance broker, for negligence, alleging that J & H failed to add Proulx as an additional insured under comprehensive general liability insurance policies issued to Crest-Liners, Inc. (Crest-Liners), to whom Proulx subcontracted certain work. Proulx alleged that as a result of J & H's failure to add Proulx as an additional insured, Proulx was damaged in connection *445 with a claim made against it by Turner Construction Company (Turner) arising from Crest-Liners' work, which claim, Proulx alleged, would have been covered by the insurance if Proulx had been named as an additional insured.
In moving for summary judgment, J & H contended that its failure to add Proulx as an additional insured did not cause Proulx any damage because (1) Turner's claim against Proulx would not have been covered by the policy at issue even if Proulx had been an additional insured, and (2) even if the claim had been covered, Proulx suffered no damage because it had received or waived the benefits that would have been available to it as an additional insured.
The trial court granted J & H's summary judgment motion and entered judgment in favor of J & H, finding that there was "no genuine dispute that [Turner's] claim against Proulx was expressly and solely for breach of contract, and as such sought recovery for economic damages [which are not covered under the policy at issue] and not for property damages [which are covered under the policy]." We hold that there is a triable issue of fact as to whether the insurance coverage that J & H failed to obtain for Proulx could have covered Proulx's damages. There is evidence that some of the sums Turner sought to recover from Proulx were due to property damage covered under the policy, that the policy would have covered Proulx's alleged vicarious liability to Turner, and that Proulx's settlement of its claim against Crest-Liners does not bar Proulx's claims against J & H. J & H has not otherwise established that Proulx's claim is legally barred. Accordingly, we reverse the judgment.

BACKGROUND[1]

Installation and Attempted Repair of Tank Liner
Proulx subcontracted to furnish and install roofing and waterproofing on a 25-story commercial building being built on Figueroa Street in downtown Los Angeles. Turner was the general contractor on the building that was known as the 801 Tower Project. As part of its subcontract with Turner, Proulx was required to install a waterproof liner in a tank that was part of the building's air conditioning system. Because it did not have expertise in installing the kind of liner required under its contract with Turner, Proulx subcontracted the installation of the liner to Crest-Liners.
Crest-Liners started its work on the tank liner in September 1991. The tank began to leak shortly after Crest-Liners installed the liner. Crest-Liners attempted to repair the leak, but more leaks occurred. At one point, the tank was leaking at a rate of 400 gallons of fluid per day.
Over the next year, Crest-Liners, Proulx, and others made several attempts to identify the sources of the leaks and repair them. During several of those attempts the tank had to be emptied and there was damage to some of the cooling materials in the tank. While the repairs were being made, the air conditioning system could not run, and an expensive backup system was used to cool the building. The exact cause or causes of all of the leaks is unclear, although some of them may be attributable to Crest-Liners' work.

Turner's Claim Against Proulx
Turner met and exchanged correspondence with Proulx during the months in which the tank leaked. In memoranda of *446 those meetings and in the correspondence, Turner noted (among other things) that the leaks had damaged certain pumps and valves, caused the waste of nearly half a million gallons of water Turner had paid for, and prevented the use of the air conditioning and other systems.
After more than a year in which Crest-Liners and Proulx were unable to repair the leaks, in January 1993 Turner demanded that Proulx remove and replace the liner. When Proulx failed to respond to Turner's demand, Turner declared Proulx in default of the subcontract between them. The building's owner subsequently contracted with another company to replace the liner. In October 1993, Turner itemized the costs associated with the leaky liner and calculated its "[t]otal net claim against Proulx." The itemized list of costs included such items as "Painting in office area," "Replace DP transmitter in valve pit," "Repair office area," and "Patch Drywall," in addition to costs associated with replacing the defective waterproof liner. Turner's claim came to just over $300,000. Proulx entered into a settlement with Turner, but the form and amount of the settlement are not disclosed in the record.

Proulx's Lack of Expected Coverage Under Crest-Liners' Insurance Policies
The subcontract between Proulx and Crest-Liners required Crest-Liners to "maintain in full force and effect ... a comprehensive liability insurance policy" and to "furnish certificates of insurance to [Proulx] before commencing work." The subcontract also required Crest-Liners to indemnify and hold Proulx harmless against all claims, demands, and liability for damages arising out of or connected with Crest-Liners' activities and performance of its work installing the waterproof liner.
Several weeks after executing the subcontract, Proulx sent a "letter of transmittal" to Crest-Liners, asking Crest-Liners to forward to Proulx the certificate of insurance and to list Proulx as an additional insured. Crest-Liners contacted its insurance broker, J & H, and asked it to add Proulx as an additional insured under Crest-Liners' general liability policy with National Union Fire Insurance Company (National Union).
J & H issued a certificate of insurance that listed Proulx as such an additional insured, and the certificate was forwarded to Proulx. The J & H agent who signed the certificate of insurance believed at the time she issued the certificate that insurance coverage was automatically extended to the additional insured when the certificate of insurance was sent to National Union. As it turns out, her belief was incorrect. She later learned that National Union would extend coverage only if J & H made a specific request to a specific underwriter. Because the J & H agent had not made such a request, coverage under Crest-Liners' policy was not extended to Proulx.
Proulx was not aware that it had not been added to Crest-Liners' policy as an additional insured. On October 1, 1992, Proulx asked Crest-Liners to inform National Union "of the Glycol Tank leak situation." Crest-Liners did so on October 5, 1992. On January 8, 1993, Proulx's attorney sent a letter to American International Adjusting Group, stating that Proulx was named as an additional insured under Crest-Liners' policy with National Union and demanding that National Union resolve the claim made against Proulx by Turner. National Union denied coverage on the ground that Proulx was never added to any of Crest-Liners' policies as an additional insured.

*447 Proulx's Attempt to Recover Its Alleged Damages

Proulx filed the original complaint in this action in November 1994, alleging several claims against Crest-Liners arising from its defective work and its representations regarding its qualifications, and two claims against National Union for breach of insurance contract and bad faith. The court dismissed the claims against National Union on demurrer because Proulx was not an insured under the National Union policies. National Union provided a defense to Crest-Liners in connection with Proulx's lawsuit against Crest-Liners, and paid Proulx $210,000 to settle Proulx's claims against Crest-Liners. At some point (the record is unclear), Proulx amended its complaint to allege a claim for negligence against J & H.

J & H's Motion for Summary Judgment
J & H moved for summary judgment. In its moving papers, J & H challenged only the causation and damages elements of Proulx's claim.
J & H argued that its failure to add Proulx as an additional insured under Crest-Liners' policy did not cause Proulx's alleged damages because Crest-Liners' policy would not have covered Turner's claim against Proulx, even if Proulx had been an additional insured, for three reasons: (1) the policy obligated the insurer to defend and indemnify only if a lawsuit was filed against the insured, and Turner had not filed a lawsuit; (2) the policy only covered "bodily injury" or "property damage" caused by an "occurrence" as those terms are defined in the policy, and Turner's claim was for economic loss for breach of contract, which claim is not covered; and (3) the policy prohibited an insured from voluntarily making a payment or settling a claim without the insurer's consent, and Proulx had voluntarily made payments to or settled with Turner.
J & H argued that Proulx was not entitled to any damages as a result of J & H's failure to add Proulx as an additional insured because (1) the contract between Proulx and Crest-Liners, which contract Proulx alleged gave rise to J & H's duty to add Proulx as an additional insured, required only that Crest-Liners indemnify Proulx for vicarious liability Proulx incurred as a result of Crest-Liners' negligence, whereas Turner's claim against Proulx was for Proulx's active negligence; and (2) Proulx settled the lawsuit it brought against Crest-Liners for Crest-Liners' negligence and dismissed its causes of action with prejudice, which dismissal bars further litigation on the same subject matter.
J & H's separate statement of undisputed material facts was divided into four sections: "Background Facts," "Facts About Insurance Coverages," "Construction Contracts," and "Settlement Operates As Retraxit." All of the facts in the "Facts About Insurance Coverages" section related to either whether Turner's claim against Proulx came within the insuring agreement portion of the National Union policies (i.e., whether the claim was "bodily injury" or "property damage" caused by an "occurrence") or the timing of Proulx's notice to National Union about Turner's claim. None of the facts related to the applicability of any of the exclusions in the policies.
The evidence submitted in support of J & H's motion included memoranda and correspondence in which Turner appears to assert that the leaks in the tank liner caused damage to property other than the tank itself and prevented the use of the air conditioning system as well as other systems in the building. J & H also submitted *448 the declaration of a purported insurance coverage expert, who testified that no Comprehensive General Liability Policies issued by National Union to parties working in the construction business during the past 16 years would have provided coverage for the kind of claim Turner alleged against Proulx.

Proulx's Opposition
In opposing J & H's motion, Proulx contended that (1) the absence of a lawsuit by Turner against Proulx was not dispositive because J & H's negligence deprived Proulx of coverage and therefore Proulx was in the same position as an insured whose insurer wrongfully denies coverage, i.e., it was empowered to deal with a claimant on its own before a lawsuit was filed; (2) Turner's claim was at least in part based upon property damage as defined in Crest-Liners' policies, caused by Crest-Liners' defective work; (3) Proulx's attempts to mitigate the damage being caused by the leaking tank did not vitiate coverage under the Crest-Liners policies because they were not "voluntarily" incurred and they did not prejudice National Union; (4) regardless of the terms of the written contract between Crest-Liners and Proulx, Crest-Liners attempted to add Proulx as an additional insured under its policies with National Union and J & H represented that it had accomplished it; and (5) Proulx's settlement with Crest-Liners did not bar its claim against J & H because the settlement covered only the harm caused by Crest-Liners' independent acts of negligence rather than the harm caused by J & H's negligence.
Proulx submitted evidence that (1) it had demanded that Proulx be added as an additional insured under Crest-Liners' policies, and believed that it had be so added; (2) Turner's claim against Proulx was based upon Crest-Liners' active negligence; (3) it notified Crest-Liners, National Union, and J & H that Proulx sought coverage under Crest-Liners' policies and National Union denied coverage; and that (4) it took corrective action and incurred expenses (both before and after National Union was notified of the claim and denied coverage) in an effort to mitigate its damages.

J & H's Reply
In reply to Proulx's opposition, J & H submitted an additional declaration of its insurance expert regarding the scope of coverage under certain policy endorsements. J & H also submitted portions of the deposition of Turner's "person most knowledgeable" witness, who testified that the document summarizing Turner's claim against Proulx did not include "costs for damages that we commonly term ripple beyond the glycol and fire tank itself." He did not, however, explain exactly what "ripple" damages include or exclude. He also stated that the summary of Turner's claim did not include any costs that Proulx or Crest-Liner had already incurred to repair the leaking tank.

The Hearing and Supplemental Briefs
At the hearing on J & H's motion, the trial court issued a written tentative ruling. In summarizing its tentative ruling at the hearing, the court explained that the National Union policy would not have provided coverage because Turner's claim was based upon the contract between Turner and Proulx, and because certain exclusions(b) (assumption of liability by contract), (j)(6) (restoration or repair of property on which insured performed work), (m)(1) (defect in insured's work causing damage to "impaired property"), and (m)(2) (delay or failure to perform obligation)would preclude coverage.
Proulx filed a supplemental brief regarding the effect of the policy exclusions the trial court raised, asserting that there were fact questions regarding the applicability *449 of the exclusions. J & H replied to Proulx's supplemental brief and asserted that each of the exclusions apply and preclude coverage.

The Trial Court's Ruling
The trial court granted J & H's motion on the ground that "[Turner's] claim against Proulx was expressly and solely for breach of contract, and as such sought recovery for economic damages and not for property damages." The court stated that the itemized claim that Turner prepared, which both J & H and Proulx submitted in support of and opposition to the motion, "may constitute evidence that there was property damage attributable to the leaking liner," but the court concluded that summary judgment was appropriate because the inclusion of those items did not "indicate that [Turner] was asserting a claim for the property damage rather than the economic loss associated with repairing the damage."

DISCUSSION

A. Standard of Review

On appeal from a summary judgment, we make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (Iverson v. Muroc Unified School Dist. (1995) 32 Cal.App.4th 218, 222, 38 Cal. Rptr.2d 35.)
"From commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law.... A defendant [moving for summary judgment] bears the burden of persuasion that `one or more elements of the `cause of action' in question `cannot be established,' or that `there is a complete defense' thereto.'" (Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 850, 107 Cal.Rptr.2d 841, 24 P.3d 493 (Aguilar), italics and footnotes omitted.) In addition, "the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (Id.) If, and only if, the moving party carries that burden, the burden of production shifts to the opposing party to make a prima facie showing of the existence of a triable issue of material fact. (Id.) "A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.] No more is called for." (Id. at p. 851, 107 Cal.Rptr.2d 841, 24 P.3d 493.)
Although "[t]he purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute" (Aguilar, supra, 25 Cal.4th at p. 843, 107 Cal.Rptr.2d 841, 24 P.3d 493), our Supreme Court has warned that the summary judgment "procedure is drastic and should be used with caution in order that it may not become a substitute for existing methods in the determination of issues of fact" (Eagle Oil & Ref. Co. v. Prentice (1942) 19 Cal.2d 553, 556, 122 P.2d 264). Accordingly, declarations of the moving party are strictly construed, those of the opposing party are liberally construed, and doubts as to whether a summary judgment should be granted must be resolved in favor of the opposing party. The court focuses on issue finding; it does not resolve issues of fact. The court seeks to find contradictions in the evidence, or inferences reasonably deducible from the evidence, that raise a triable issue of material fact. (Michael J. v. Los Angeles County Dept. of Adoptions (1988) 201 Cal.App.3d 859, 865-866, 247 Cal.Rptr. 504.)
*450 If, in deciding this appeal, we find there is no issue of material fact, we affirm the summary judgment if it is correct on any legal ground applicable to this case, whether that ground was the legal theory adopted by the trial court or not. (Western Mutual Ins. Co. v. Yamamoto (1994) 29 Cal.App.4th 1474, 1481, 35 Cal.Rptr.2d 698.) If, on the other hand, we find that one or more triable issues of material fact exist, then we must reverse the judgment.

B. Proulx's Professional Negligence Claim Requires Proulx To Show That Crest-Liners' Policies Would Have Covered Turner's Claim

Proulx's cause of action against J & H, a professional negligence claim, is similar to a legal malpractice claim, in that liability must be established in a case-within-a-case. Just as a plaintiff in a legal malpractice case must establish that it would have prevailed in the underlying action but for the defendant's professional negligence, Proulx can recover on its cause of action against J & H only if it can show that, but for J & H's negligence, Proulx would have had at least some coverage for Turner's claim under the National Union policies. Without such a showing, there is no cause of action because there are no damages caused by the breach of the professional's duty. (See, e.g., Budd v. Nixen (1971) 6 Cal.3d 195, 200, 98 Cal.Rptr. 849, 491 P.2d 433 ["The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harmnot yet realizeddoes not suffice to create a cause of action for negligence"]; see also Walker v. Pacific Indemnity Co. (1960) 183 Cal.App.2d 513, 516-517, 6 Cal.Rptr. 924 [cause of action against insurance agent for negligently procuring insurance in amount less than ordered by insured did not accrue until judgment was entered against insured for more than coverage amount, unless insured could show special facts to establish other injury, such as adverse credit rating based upon mere existence of unindemnified liability].) Thus, in addressing the causation element of Proulx's negligence claim in J & H's motion for summary judgment, J & H attempted to establish that Crest-Liners' policies would not have provided coverage to Proulx for Turner's claim if Proulx had been an additional insured under those policies.

C. There Was A Triable Issue Regarding Whether Turner's Claim Against Proulx Was For "Property Damage"

Proulx contends that there was evidence of property damage caused by Crest-Liners' work and that this evidence raises a triable issue because, regardless of Turner's legal theory for recovery (breach of contract or tort), the damages Turner sought were "because of property damage, as required for coverage under Crest-Liners' insurance policies. Crest-Liners' policies provided that National Union would "pay those sums that the insured becomes legally obligated to pay as damages because of ... `property damage' to which this insurance applies." "Property damage" is defined as "a. Physical injury to tangible property, including all resulting loss of use of that property; or [¶] b. loss of use of tangible property that is not physically injured." To be covered under a commercial general liability (CGL) policy, such as the policy in this case, the "property damage" must be to tangible property other than the insured's own work, caused by the insured's defective work. (See, e.g., Maryland Casualty Co. v. Reeder (1990) 221 Cal.App.3d 961, 967, 270 Cal.Rptr. 719.)
The "focus [should be] on the nature of the risk and the injury, in light of the policy provisions," rather than on the form of action chosen by the injured party, when determining whether a claim is covered. (Vandenberg v. Superior Court *451 (1999) 21 Cal.4th 815, 839-840, 88 Cal. Rptr.2d 366, 982 P.2d 229 (Vandenberg).) In AIU Ins. Co. v. Superior Court (1990) 51 Cal.3d 807, 274 Cal.Rptr. 820, 799 P.2d 1253 (AIU), the Supreme Court examined whether there is coverage under a CGL policy for an insured who, as a result of an injunctive relief action filed against it, may become obligated to pay for cleanup or other response costs related to the insured's release of hazardous materials into the environment. Looking at the "because of "property damage" language of the CGL policy, the Supreme Court said that when government agencies seek to recover from an insured the reimbursement of the agencies' response costs, "in plain and ordinary terms such recovery is `because of property damage. It is immaterial whether motivations other than protection of propertyfor example, protection of the health of persons living near hazardous waste sitesalso contribute to the agencies' pursuit of statutory relief.... Whatever their dominant motive, the event precipitating their legal action [to require the insured to pay to clean up the hazardous material or to reimburse the agencies for their cleanup costs] is contamination of property. The costs that result from such action are therefore incurred `because of property damage." (Id. at pp. 842-843, 274 Cal.Rptr. 820, 799 P.2d 1253.)
In light of Vandenberg and AIU, the issue here is whether at least some of the damages Turner sought to recover were "because of "property damage" as those terms are used in the insurance policies at issue, regardless of whether Turner sought those damages under a contract theory or a tort theory. In moving for summary judgment, J & H submitted (among other things) a document that on its face suggests that at least some of the damages Turner sought to recover from Proulx were "because of "property damage." That document, a summary of Turner's claim against Proulx, lists costs associated with repairing damage to property other than the liner Crest-Liners installed in the glycol tank, which damages apparently were caused by the leaking liner. In addition, J & H submitted other documents in which reference is made to damage to other property, which damage also was caused by the leaking liner. This evidence suggests that the leaking liner caused "physical injury" to "tangible property" other than the liner itself, for which Turner sought reimbursement (albeit, under a breach of contract theory). Thus, J & H's own evidence raises a triable issue regarding whether Turner's claim was for damages "because of "property damage."
Because the references to damage to such property as the "office area" are sufficient to raise a triable issue, we do not need to resolve at this stage of the case whether damage to other items would be covered by the policies. Also, we do not need to determine whether, as Proulx contends, the cost to remove the leaking liner is recoverable under Crest-Liners' policies, either because the liner was incorporated into other property (as in Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc. (2000) 78 Cal.App.4th 847, 93 Cal.Rptr.2d 364 and Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co. (1996) 45 Cal.App.4th 1, 52 Cal. Rptr.2d 690) or because removal was a remedial action (as in AIU, supra). Because J & H failed to meet its burden of production to establish that Turner's claim against Proulx did not seek to recover for at least some "physical injury" to property other than the liner (i.e., damages "because of "property damage"), J & H is not entitled to summary judgment on the ground that there was no alleged "property damage." (Aguilar, supra, 25 Cal.4th at p. 850, 107 Cal.Rptr.2d 841, 24 P.3d 493.)

*452 D. None Of The Grounds J & H Raised In The Trial Court Justifies Summary Judgment

In determining whether summary judgment is appropriate on any other ground supported by J & H's separate statement of undisputed facts (Western Mutual Ins. Co. v. Yamamoto, supra, 29 Cal.App.4th at p. 1481, 35 Cal.Rptr.2d 698), we limit our review to grounds supported by the separate statement because only those facts set forth in the separate statement are relevant when determining whether summary judgment should be granted. (See, e.g., United Community Church v. Garcin (1991) 231 Cal.App.3d 327, 337, 282 Cal.Rptr. 368["[A]ll material facts must be set forth in the separate statement. `This is the Golden Rule of Summary Adjudication: if it is not set forth in the separate statement, it does not exist. Both the court and the opposing party are entitled to have all the facts upon which the moving party bases its motion plainly set forth in the separate statement'"] [italics omitted].)
J & H raised four other grounds for summary judgment in its moving papers: (1) there would not have been any coverage under the policy because Turner did not file a lawsuit against Proulx, (2) there would not have been any coverage because Proulx voluntarily made payments to Turner, (3) when Proulx sued Crest-Liners it received all of the benefits it would have received from the indemnity required under the contract between Proulx and Crest-Liners, and (4) Proulx's dismissal of its lawsuit against Crest-Liners operates as a retraxit barring the instant lawsuit. In addition to these grounds, J & H in its supplemental brief in support of its summary judgment motion raised certain exclusions in the Crest-Liners insurance policies that J & H contended would have barred coverage of Turner's claim against Proulx. None of these grounds warrants summary judgment.

1. No "suit"
J & H points to Turner's failure to file a lawsuit against Proulx to recover the damages Turner incurred as a result of the leaking liner and contends that, because an insurer has discretion to investigate and settle a "claim" and is required to defend only a "suit" under a CGL policy (Foster-Gardner, Inc. v. National Union Fire Ins. Co. (1998) 18 Cal.4th 857, 878, 77 Cal. Rptr.2d 107, 959 P.2d 265), Proulx cannot establish that National Union would have covered Turner's claim even if J & H had not failed to add Proulx as an additional insured.
J & H's failure to add Proulx as an additional insured is analogous to an insurer's wrongful denial of coverage. Courts have held that an insurer waives defenses of noncompliance with policy provisions when it wrongfully denies coverage. (See, e.g., Samson v. Transamerica Ins. Co. (1981) 30 Cal.3d 220, 238, 178 Cal.Rptr. 343, 636 P.2d 32 and Downey Savings & Loan Assn. v. Ohio Casualty Ins. Co. (1987) 189 Cal.App.3d 1072, 1088, 234 Cal. Rptr. 835.) Just as an insurer cannot assert a "no suit" defense if it has wrongfully repudiated its policy, J & H cannot assert that defense when it negligently failed to obtain coverage for Proulx under Crest-Liners' policy.[2] Having been left *453 without any insurance coverage as a result of J & H's alleged negligence, Proulx was not required to force Turner to file a lawsuit against it so it could later argue that National Union would have been obligated to defend it had J & H obtained the desired insurance coverage. J & H also argues that, because Turner did not file a lawsuit, Proulx can only speculate regarding what claims Turner might have alleged, and therefore Proulx cannot show that the National Union policy would have covered its damages. As discussed above, Proulx was not required to force Turner to file a lawsuit in order to recover for J & H's alleged negligence. Proulx submitted sufficient evidence from which a trier of fact may determine the type and scope of damages Turner sought to (and apparently did) recover from Proulx. The trier of fact could reasonably conclude that Turner would have alleged those damages had it been forced to file a lawsuit against Proulx. At trial, Proulx may seek to recover from J & H those damages that would have been covered under the National Union policy. (See Clemente v. State of California (1985) 40 Cal.3d 202, 219, 219 Cal.Rptr. 445, 707 P.2d 818 [holding that plaintiff is entitled to recover damages despite inability to prove damages with certainty when that inability is due to defendant's actions].)
Accordingly, summary judgment cannot be granted on the ground that Turner did not file a lawsuit against Proulx.

2. "Voluntary" payment
Crest-Liners' policy with National Union provided: "No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." J & H presented evidence that Proulx (including its subcontractor Crest-Liners) began to make repairs to the leaking liner, in response to Turner's notification of the leaks, before Proulx notified National Union of Turner's claim. J & H contends that, because of these repairs, Proulx breached the no voluntary payment provision, which breach would have precluded coverage for payments made before National Union was notified. (Citing Jamestown Builders, Inc. v. General Star Indemnity Co. (1999) 77 Cal. App.4th 341, 343-344, 91 Cal.Rptr.2d 514; Truck Ins. Exchange v. Unigard Ins. Co. (2000) 79 Cal.App.4th 966, 976-977, 94 Cal. Rptr.2d 516.)
Proulx argues there was no breach because its payments were not "voluntary;" relying on Fiorito v. Superior Court (1990) 226 Cal.App.3d 433, 277 Cal. Rptr. 27 and Shell Oil Co. v. National Union Fire Ins. Co. (1996) 44 Cal.App.4th 1633, 52 Cal.Rptr.2d 580. In addition, Proulx contends that summary judgment is not appropriate because coverage cannot be denied unless the insurer proves it was prejudiced by the "voluntary" payments, and J & H failed to present evidence that National Union would have been prejudiced.
We do not need to decide whether Proulx's payments were "voluntary" because J & H's argument was addressed to only those payments made before Proulx gave notice to National Union. Proulx submitted evidence that at least some of the payments were made after notice was given and National Union denied coverage. Thus, even if J & H were correct that the payments Proulx made before it gave notice to National Union were not recoverable (an issue we need not decide), those prenotice payments would not constitute a breach of the insurance policies that would preclude coverage of all of Proulx's payments, including the post-notice payments. To establish that the post-notice payments would not have been covered, J & H would have to show that National Union would have been prejudiced by those post-notice payments. (See Xebec Development Partners, Ltd. v. National Union Fire Ins. Co. (1993) 12 Cal.App.4th 501, 532-533, 566-567, *454 15 Cal.Rptr.2d 726.) Because J & H did not produce any evidence of such hypothetical prejudice to National Union, summary judgment cannot be granted on this ground.

3. Contract between Proulx and Crest-Liners
In its motion, J & H argued that Proulx was not damaged by J & H's failure to add Proulx as an additional insured because the contract between Proulx and Crest-Liners did not require Crest-Liners to "purchase general liability coverage for Proulx." J & H contended that Crest-Liners was obligated only to indemnify Proulx for damages resulting from Crest-Liners' active or passive negligence. Because Turner's claim against Proulx was, according to J & H, based upon Proulx's active negligence, Proulx was not entitled to indemnification. Therefore, J & H argued, Proulx received all of the benefits to which it was entitled under the Proulx/ Crest-Liners contract.
J & H misconstrues Proulx's cause of action. While it appears that Proulx did, in fact, misstate the terms of the Proulx/ Crest-Liners contract regarding whether Crest-Liners was obligated to procure insurance coverage for Proulx, those allegations are not dispositive of Proulx's negligence claim against J & H.
Proulx's claim against J & H was not based upon a duty arising from the Proulx/Crest-Liners contract. It was based upon J & H's voluntarily assumed undertaking to procure insurance coverage for Proulx under Crest-Liners' policies. (See, e.g., Valdez v. Taylor Automobile Co. (1954) 129 Cal.App.2d 810, 817-818, 278 P.2d 91 [finding defendant owed plaintiff duty to procure insurance when defendant told plaintiff that it would do so]; accord, Aim Insurance Co. v. Culcasi (1991) 229 Cal.App.3d 209, 215-216, 280 Cal.Rptr. 766.) Therefore, J & H's evidence regarding the terms of the Proulx/ Crest-Liners contract, even though undisputed, does not entitle J & H to summary judgment.

4. Retraxit
As an additional ground for granting summary judgment, J & H contends that Proulx's settlement with Crest-Liners, resulting in a dismissal with prejudice in favor of Crest-Liners, operated as a retraxit that bars Proulx's cause of action against J & H. A retraxit is equivalent to a judgment on the merits and as such bars further litigation on the same causes of action between the same parties. (Rodriguez v. Fireman's Fund Ins. Co. (1983) 142 Cal.App.3d 46, 54, 190 Cal.Rptr. 705, disapproved on another point in Moradi-Shalal v. Fireman's Fund Ins. Companies (1988) 46 Cal.3d 287, 250 Cal.Rptr. 116, 758 P.2d 58; see also 6 Witkin, California Procedure (4th ed. 1997 & 2001 supp.) Proceedings Without Trial, § 273, pp. 692 693.) Even if a retraxit can arise from a dismissal when there is some privity between the parties and some similarity of issues warranting issue preclusion, here J & H presented no facts in its separate statement in support of its motion for summary judgment to show either (1) that Crest-Liners and J & H should be treated as the same parties for the purpose of determining whether there was a retraxit or (2) that the resolution of issues as between Proulx and Crest-Liners would preclude the adjudication of issues in the case between Proulx and J & H. Without facts set forth in a separate statement to support a ground for summary judgment, summary judgment cannot be granted on that ground. (United Community Church v. Garcin, supra, 231 Cal.App.3d at p. 337, 282 Cal.Rptr. 368.) Accordingly, J & H did not establish a retraxit for the purposes of summary judgment.

*455 5. Policy Exclusions

In the trial court, J & H contended that four exclusions under the National Union policies would have precluded coverage of Turner's claim against Proulx. On appeal, J & H contends that those exclusions (as well as one other, discussed in Section E, post) entitled J & H to summary judgment.
In its moving papers before the trial court, J & H included a passing reference to only one exclusion under the National Union policies: Exclusion (b), which excluded coverage for "`property damage [for] which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.'" J & H argues on appeal that this exclusion precludes coverage of Turner's claim against Proulx because Proulx is obligated to pay Turner's damages solely because Proulx assumed liability in its contract with Turner.
Exclusion (b) is a "contractual exclusion clause" that precludes coverage "only in situations where the insured would not be liable to a third party except for the fact that [the insured] assumed liability under an express agreement with [that third] party." (Annot., Scope and Effect of Clause in Liability Policy Excluding From Coverage Liability Assumed by Insured Under Contract Not Defined in Policy, Such as One of Indemnity (1958) 63 A.L.R.2d 1122, 1123, 1958 WL 11272.) This exclusion would preclude coverage only if in the absence of a contractual indemnity provision, Proulx would not have been liable to Turner.
The evidence presented to the trial court demonstrates a triable issue of fact regarding whether Proulx's liability to Turner derived only from the contractual indemnity provision. The document summarizing Turner's claim against Proulx suggests that Turner incurred expenses repairing the damage caused by Crest-Liners' negligence, which expenses Turner sought to recover from Proulx. Because Proulx was vicariously liable for Crest-Liners' negligent installation of the liner (see Dow v. Holly Manufacturing Co. (1958) 49 Cal.2d 720, 727, 321 P.2d 736 [contractor liable for negligence of subcontractor]), which liability did not arise solely from a contractual indemnity provision, Turner might have recovered in tort or contract. Thus, summary judgment cannot be granted based upon the applicability of exclusion (b).
Summary judgment also cannot be granted based upon the applicability of the exclusions J & H raised in its supplemental brief in support of its motion. J & H filed its supplemental brief after the hearing on its motion, in response to the trial court's tentative ruling and the court's statement that other exclusions might preclude coverage. In its brief, J & H argued that these three other exclusions also would have applied to deny coverage: exclusions (j)(5), (m)(1), and (m)(2).
Exclusion (j)(5) excluded coverage for "property damage" to "[t]hat particular part of real property on which [the insured] ... [is] performing operations if the `property damage' arises out of those operations." This exclusion cannot be the basis for summary judgment because J & H failed to produce evidence to show that the exclusion applied, i.e., that all of the damage for which Turner sought to recover was damage to the "particular part of real property" on which Crest-Liners or Proulx was performing work. (See, e.g., Montrose Chemical Corp. v. Superior Court (1993) 6 Cal.4th 287, 300, 24 Cal. Rptr.2d 467, 861 P.2d 1153 [party asserting policy exclusion bears burden to show exclusion applies]; Aguilar, supra, 25 Cal.4th at p. 851, 107 Cal.Rptr.2d 841, 24 P.3d 493 [party who bears burden of proof *456 at trial bears burden of production on motion for summary judgment].) In fact, as discussed above, the evidence before the trial court indicated that at least some of the damage at issue involved property other than the tank liner on which Crest-Liners was performing work.
Exclusions (m)(1) and (m)(2) excluded coverage for "property damage" to "impaired property" arising out of "[a] defect, deficiency, inadequacy or dangerous condition in" the insured's work, or "[a] delay or failure by [the insured] ... to perform a contract or agreement in accordance with its terms". J & H contends that these exclusions preclude coverage of Turner's claim against Proulx because Turner sought to recover only the costs it incurred in attempting to repair and replace the leaking liner. As we discussed above, however, the evidence before the trial court suggests that at least some of the costs Turner sought to recover were related to the repair or replacement of property other than the liner. Thus, there is a triable issue of fact precluding summary judgment based upon these exclusions.

E. We Will Not Consider J & H's Arguments Raised For The First Time On Appeal Because They Raise Factual Issues

In addition to the arguments J & H raised in the trial court, J & H has raised additional arguments for the first time in its Respondent's Brief before this court.
To support its contention that Turner's claim against Proulx must have been solely for intangible economic losses, J & H argues that Turner could not have asserted a claim for property damage because Turner did not own the property damaged by Crest-Liners' defective installation of the tank liner. In addition, J & H argues that exclusion (n)which excludes coverage for expenses incurred by the insured for the "loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of the insured's defective product, work, or impaired propertyalso bars coverage of Turner's claim.
J & H did not address in its separate statement of undisputed facts the issue of the damaged property's ownership, nor did it set forth facts to show that Proulx sought to recover only expenses it incurred for the "loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of Proulx's defective product, work, or impaired property. Because each of J & H's new arguments are based upon facts that are not set forth in the separate statement and theories not addressed in J & H's moving papers in the trial court, we will not make any determination related to those facts or theories. (See United Community Church v. Garcin, supra, 231 Cal. App.3d at p. 337, 282 Cal.Rptr. 368 [facts not set forth in separate statement do not exist]; Johanson Transportation Service v. Rich Pik'd Rite Inc. (1985) 164 Cal. App.3d 583, 588, 210 Cal.Rptr. 433 ["possible theories not fully developed or factually presented to the trial court cannot create a `triable issue' on appeal" and will not be considered by appellate court].) We note, however, that J & H's "property owner" theory is premised on a misreading of the policy language. J & H asserts that Turner could not have brought a claim against Proulx for property damage unless Turner was the owner of the property at issue. Although that theory might have validity if the policies stated that the insurer would "pay those sums that the insured becomes legally obligated to pay as property damages," the policies in fact state that the insurer will "pay those sums that the insured becomes legally obligated to pay as damages because of ... `property damage.'" Thus, to prevail under this *457 theory, J & H will have to establish in the trial court that Turner had no rightas a property owner or otherwiseto recover the suras in question from Proulx.

DISPOSITION
The judgment is reversed. Appellant is to recover its costs on appeal.
We concur: TURNER, P.J., and ARMSTRONG, J.
NOTES
[1] Because we are reviewing a summary judgment, we have strictly construed the moving party's (J & H) evidence and liberally construed the opposing party's (Proulx) evidence. (Barber v. Marina Sailing, Inc. (1995) 36 Cal. App.4th 558, 562, 42 Cal.Rptr.2d 697.)
[2] Our holding that J & H, an insurance broker, cannot assert a "no suit" defense under these circumstances should not be read to mean that an insurer cannot assert that defense in all situations in which it denies coverage. It may be found that the insurer does waive the defense when it wrongfully denies coverage or wrongfully repudiates the policy. (See, e.g., Grant v. Sun Indemnity Co. (1938) 11 Cal.2d 438, 440, 80 P.2d 996 ["It is a well-recognized rule ... that the insurer may not repudiate the policy, deny all liability, and at the same time be permitted to stand on a provision inserted in the policy for its benefit"].)