Filed 2/10/16  Reyes v. Health CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| MARIA REYES,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>DIGNITY HEALTH,<br><br>    Defendant and Respondent | B262573<br><br>(Los Angeles County<br>Super. Ct. No. EC059821) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Donna Goldstein, Judge.  Reversed.

Law Offices of J. Grant Kennedy and J. Grant Kennedy for Plaintiff and Appellant.

Fraser Watson & Croutch and Daniel K. Dik for Defendant and Respondent.

_____

# INTRODUCTION

Plaintiff Maria Reyes appeals from the summary judgment entered in favor of Defendant Dignity Health doing business as California Hospital Medical Center (California Hospital). Because a disputed issue of material fact exists as to whether the physician who examined and operated on Plaintiff at California Hospital met the standard of care, and California Hospital failed to negate the allegation that this physician was its ostensible agent, we reverse the summary judgment.

# FACTS[1] AND PROCEDURAL BACKGROUND

On December 17, 2011, Plaintiff presented to the emergency department at Glendale Hospital complaining of pain in her left knee caused by a fall earlier that morning.

The emergency room physician, Dr. Moustafa Moustafa, examined Plaintiff and noted her left foot appeared normal, non-tender with normal color and temperature; her ankle appeared normal, with "no joint swelling" and normal range of motion; and her thigh and hip appeared normal, but her gait was "not tested due to pain." Dr. Moustafa also noted Plaintiff's sensation was normal and he determined there was "no vascular compromise."

Dr. Moustafa ordered x-rays of Plaintiff's left leg, which were reviewed by a radiologist, Dr. J. Kevin Mackey. Dr. Mackey determined the x-rays showed "a proximal tibial metaphyseal fracture with depressed and laterally displaced lateral tibial plateau prominent fracture fragment." Based in part on these impressions, Dr. Moustafa diagnosed Plaintiff's injury as a " '[left] knee plateau fracture.' " He ordered a long leg splint for Plaintiff, with a plan to transfer her to California Hospital.

---

[1] We draw the undisputed material facts from the parties' separate statements. (See *Roger H. Proulx & Co. v. Crest-Liners, Inc*. (2002) 98 Cal.App.4th 182, 197-198 (*Proulx*).) Where a genuine factual dispute exists, we state the evidence admitted by the trial court in the light most favorable to Plaintiff, as the nonmoving party, in accordance with the standard of review applicable to summary judgments. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

Plaintiff arrived at California Hospital later that evening. Admitting hospital staff noted her pulses were "within normal limits." Approximately three hours later, Plaintiff's nurse noted she was unable to palpate Plaintiff's left pedal pulse. Although Plaintiff was unable to move her toes, the nurse noted Plaintiff had "good capillary refill to the toes in the left foot, which was warm to the touch." Plaintiff complained of numbness in her lower leg and the nurse noted bruising below her left knee.

Forty minutes later, Dr. Darryl Willoughby, an orthopedic surgeon, examined Plaintiff. Dr. Willoughby observed that Plaintiff had tenderness and decreased sensation over her left lower leg, indicating a " '[l]eft proximal tibial fracture, [and] possible vascular injury.' " After consulting with another physician who had examined Plaintiff, Dr. Willoughby ordered a left knee and left lower extremity computed tomography (CT) angiogram to be followed by a consultation with a vascular surgeon.

An hour later, Plaintiff underwent a CT angiogram of her left lower leg. An hour and half later, now 12:30 a.m. on December 18, 2011, Defendant Dr. Charles Klieman, a vascular surgeon, reviewed the CT angiogram and noted that it showed "popliteal occlusion"—a blockage of the artery in the back of the knee—and "good collateral flow to two vessels." He indicated to Dr. Willoughby that Plaintiff was " 'not in danger of losing her limb' " and could " 'go for emergent repair of her popliteal artery versus bypass of her left lower extremity' " at 5:30 a.m.

At 5:00 a.m. on December 18, 2011, Dr. Klieman noted that, although Plaintiff's foot was warm, she was unable to move it due to popliteal nerve injury. Forty-five minutes later, Plaintiff was taken to surgery, where she underwent several procedures to improve circulation to her left lower leg. Despite the surgery, Plaintiff's circulation remained compromised.

On December 19, 2011, Plaintiff underwent a second surgery to restore circulation to her left lower leg. Unfortunately, the surgery proved unsuccessful and, on December 21, 2011, Plaintiff underwent a below the knee amputation. On January 6, 2012, Plaintiff underwent an above the knee amputation.

3

On December 21, 2012, Plaintiff filed her initial complaint for medical malpractice against Glendale Hospital and California Hospital. Plaintiff subsequently filed Doe amendments naming Dr. Klieman and others as additional defendants. The complaint alleges California Hospital and the other defendants "negligently failed to exercise the proper degree of knowledge and skill in examining, diagnosing, [and] treating" Plaintiff's knee injury, and that "[a]t all said times each defendant was the agent of each other defendant, and was acting within the course and scope of said agency."

California Hospital moved for summary judgment on the grounds that "the care and treatment rendered by the employees of defendant[ ] [California Hospital] conformed, at all times, with the applicable standard of practice" and "said employees did not cause, or contribute to, plaintiff's alleged injuries or damages." In support of the motion, the hospital submitted the declaration of its Risk Manager to authenticate an "abstract of the medical chart of plaintiff MARIA P. REYES" as records "prepared and kept [by] the referenced physicians and the hospital staff in the ordinary course of business at, or near the time of the act, condition, or event as described therein." Additionally, California Hospital submitted a declaration by Dr. Michael Smolens, an emergency room physician certified by the American Board of Emergency Medicine, who opined, based on his review of Plaintiff's medical chart, that "the employees of defendant [California Hospital] acted within the standard of care in the community for employees of an acute care hospital." Specifically, Dr. Smolens asserted that "the nurses performed the correct physical assessment expected of a floor nurse, noted the lack of pulses and immediately informed the admitting physician." Additionally, Dr. Smolens noted, "the staff carried out all orders for laboratory and radiological studies, medication and consultations in a timely fashion."

4

In opposition to the motion, Plaintiff principally argued that California Hospital failed to satisfy its burden as the moving party, because it did not address its liability for Dr. Klieman's negligence in his capacity as the hospital's ostensible agent. Plaintiff emphasized that it was undisputed she sought treatment at California Hospital, and this fact alone created a triable issue as to whether Dr. Klieman was the hospital's ostensible agent. Additionally, Plaintiff offered the declaration of Dr. Wayne Gradman, a surgeon and physician with board certifications in phlebology, vascular surgery and general surgery, who opined that the "care and treatment provided at [California Hospital] by Dr. Charles Klieman M.D. was below the standard of care." Specifically, Dr. Gradman asserted that Dr. Klieman should have "arranged for surgery as soon as he [was] informed of possible popliteal artery occulsion." Dr. Gradman explained that "surgery should be done expeditiously once a possible arterial injury is identified[,]" because "[u]necessary delay results in the increased likelihood of ischemic neuropathy, extension of thrombosis in arteries and veins distal to the injury, and a compartment syndrome leading to muscle necrosis." By allowing an "unnecessary delay of six hours," and "justify[ing] the delay by declaring there is no jeopardy of limb loss," Dr. Klieman failed to meet the standard of care, according to Dr. Gradman. Dr. Gradman also noted other purported deficiencies in Dr. Klieman's performance of the initial surgery, which Dr. Gradman opined contributed to Plaintiff ultimately requiring a leg amputation.

California Hospital addressed the ostensible agency issue for the first time in its reply brief. The hospital argued evidence submitted with its moving papers showed "[Plaintiff] was given actual notice of the true relationship between the hospital and the doctors who treated her." (Boldface and underlining omitted.) Specifically, the hospital cited a document entitled "CONDITIONS OF ADMISSION AND TREATMENT" (Admission Form), which provides the following explanation:

5

"**5. Doctors are Independent Medical Care Providers**

**Doctors caring for patients in the Hospital are independent providers of medical care and are not employees or agents of the Hospital. These doctors include clinic physicians, surgeons, emergency room doctors, hospitalists, radiologists, pathologists, anesthesiologists and intensive care doctors. The doctors are also responsible for giving you information about the risks, benefits, and alternative kinds of treatment so that you can make an informed decision about the Patient's care. The Hospital's nurses and staff are responsible for carrying out the instructions of the doctor(s). You will receive a separate bill from the doctors for their services.**"

The hospital also cited a "CONSENT TO SURGERY OR SPECIAL PROCEDURE" form (Consent Form) with the following clause:

"6. **Staff and Facilities.** Other doctors may be involved with the performance of some part of your procedure. Most doctors on our medical staff, including pathologists and radiologists, are independent practitioners and are not employees or agents of the Hospital. The Hospital provides the facilities, equipment, supplies and staff to help your primary surgeon and the other doctors carry out the procedure."

In its reply brief, California Hospital claimed "[Plaintiff's] signature is found on each of these consent documents," though it offered no evidence to prove this assertion. The hospital nevertheless argued the Admission Form and Consent Form conclusively negated Plaintiff's claim that Dr. Klieman was its ostensible agent when he operated on her at California Hospital.

The trial court granted the summary judgment motion.  In its written statement of decision, the court reasoned it was not California Hospital's burden to prove that Dr. Klieman was not its ostensible agent because, in the court's view, the complaint "did not plead that [California Hospital] was liable for the conduct of Charles Klieman."  Thus, insofar as California Hospital's expert declaration established that the nurses and other hospital staff acted within the standard of care, the court concluded the hospital was entitled to summary judgment.

## DISCUSSION

### 1. *Standard of Review*

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)  We make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar, supra,* 25 Cal.4th at p. 843.)  In conducting this analysis, "declarations of the moving party are strictly construed, those of the opposing party are liberally construed, and doubts as to whether a summary judgment should be granted must be resolved in favor of the opposing party." (*Proulx, supra,* 98 Cal.App.4th at p. 195.)

A defendant may move for summary judgment "if it is contended that the action has no merit . . . ." (Code Civ. Proc., § 437c, subd. (a).)  A defendant meets its burden by showing that "one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action.  Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a

7

triable issue of one or more material facts exists as to that cause of action or a defense thereto." (*Id.*, subd. (p)(2).) "The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.*, subd. (c).)

In performing our de novo review, we apply " 'the same three-step process required of the trial court: First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond; secondly, we determine whether the moving party's showing has established facts which negate the opponent's claims and justify a judgment in movant's favor; when a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue.' " (*Waschek v. Department of Motor Vehicles* (1997) 59 Cal.App.4th 640, 644.)

2. *California Hospital Failed to Meet Its Initial Burden of Showing Dr. Klieman Was Not Acting as Its Ostensible Agent when He Treated Plaintiff*

Plaintiff contends California Hospital failed to meet its initial burden because it did not address its potential liability for Dr. Klieman's alleged negligence under an ostensible agency theory. The trial court rejected this assertion on the ground that Plaintiff failed to allege agency as a potential source of liability against California Hospital. The court's conclusion is not consistent with a fair reading of the complaint. Contrary to the court's assessment, the complaint plainly alleges that at all times "each defendant was the agent of each other defendant, and was acting within the course and scope of said agency." Dr. Klieman and California Hospital are both named defendants. When Plaintiff's counsel brought this allegation to the court's attention at the summary judgment hearing, the court acknowledged that the allegation raised "a question of fact." Nonetheless, the court incorrectly assigned Plaintiff the burden of presenting evidence to establish the fact, notwithstanding California Hospital's failure to present evidence refuting the allegation in its moving papers. This was error.

8

On appeal, California Hospital acknowledges that the alleged agency relationship between all defendants placed ostensible agency in issue, and it does not advance the trial court's position that Plaintiff had the initial burden to present evidence of an agency relationship in opposing summary judgment. [2] Further, California Hospital does not dispute that Plaintiff sought treatment for her leg injury at its facilities and that Dr. Klieman administered such treatment at the hospital. Thus, as part of California Hospital's initial burden in moving for summary judgment, Plaintiff argues the hospital was required to negate the ostensible agency allegation by establishing that Plaintiff knew or should have known Dr. Klieman was not the hospital's agent when he rendered the allegedly negligent treatment. Because California Hospital failed to address the issue in its motion and separate statement, Plaintiff contends the hospital failed to meet its summary judgment burden.

California Hospital argues this deficiency does not warrant reversal. Citing the Admission Form and Consent Form as evidence that Plaintiff had notice of the hospital's purported employment relationship with Dr. Klieman, California Hospital argues there is no basis for holding it vicariously liable, notwithstanding the complaint's agency allegations. The principal problem with this contention, as Plaintiff points out, is that California Hospital failed to state any facts in its motion or separate statement to support its contention that Dr. Klieman was not its employee or agent, nor any facts to show that Plaintiff knew or should have known as much. The moving papers make no mention of the Admission Form, Consent Form or any other notice that Plaintiff might have received concerning the hospital's purported legal relationship with Dr. Klieman. In view of

---

[2] California Hospital also does not contend that its expert evidence conclusively established Dr. Klieman acted within the standard of care, nor does it dispute that Plaintiff's expert evidence raised a triable issue as to Dr. Klieman's negligence. Thus, if the trier of fact could find Dr. Klieman was the hospital's ostensible agent, California Hospital would not be entitled to summary judgment. (*Jacoves v. United Merchandising Corp.* (1992) 9 Cal.App.4th 88, 103 ["A hospital is liable for a physician's malpractice when the physician is actually employed by or is the ostensible agent of the hospital"].)

9

California Hospital's burden, and the due process considerations underpinning the procedural requirements for summary judgment, this omission is fatal.

Even setting aside the procedural deficiency, there is another problem with the Admission Form and Consent Form that California Hospital overlooks. Before it could rely upon these forms to show Plaintiff knew or should have known Dr. Klieman was not its agent or employee, California Hospital first was required to prove Plaintiff actually signed the forms when she was admitted. The declaration by California Hospital's risk manager, who does not claim to have personal knowledge of Plaintiff's admission to the hospital or the appearance of her signature, purports to prove neither. At most, the risk manger's declaration establishes that the form was included among the documents identified as an "abstract of the medical chart of Plaintiff MARIA P. REYES." Viewing the evidence in the light most favorable to Plaintiff as the nonmoving party, the mere existence of these forms in Plaintiff's medical records was not sufficient to "conclusively indicate[] that [Plaintiff] should have known [Dr. Klieman] was not the hospital's agent." (*Mejia v. Community Hospital of San Bernardino* (2002) 99 Cal.App.4th 1448, 1458 (*Mejia*); see also *Whitlow v. Rideout Memorial Hospital* (2015) 237 Cal.App.4th 631, 640.)

Plaintiff adequately pled an agency relationship between all defendants in her complaint. Accordingly, as part of its initial burden in moving for summary judgment, California Hospital was required to negate the ostensible agency allegation by presenting evidence establishing as an undisputed fact that Dr. Klieman was not its employee and that Plaintiff knew or should have known of this relationship when she received treatment from Dr. Klieman at the hospital. (See *Reyes v. Glendale Memorial Hospital* (Jun. 26, 2015, B255302) [nonpub. opn.]; *Mejia, supra,* 99 Cal.App.4th at p. 1454.) Because California Hospital failed to present such evidence in its moving papers, the trial court erred in granting it summary judgment.

10

## DISPOSITION

The summary judgment is reversed.  Plaintiff Maria Reyes is entitled to her costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

JONES, J. [*]

We concur:

EDMON, P. J.

ALDRICH, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11