[No. B129058. Second Dist., Div. Six. Dec. 30, 1999.]

RICHARD T. RAY, Plaintiff and Appellant, v.
VALLEY FORGE INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Heily & Blase, John R. Johnson and Carol J. Covington for Plaintiff and Appellant.

Olson, Cortner & McNaboe and Laurie S. Julien for Defendant and Respondent.

**OPINION**

**GILBERT, J.**—A roofing consultant gives bad advice to a homeowners association about reroofing materials. The homeowners association sues the consultant. The consultant tenders defense under his commercial general liability policy, and the insurer refuses to defend. The consultant settles with the homeowners association and sues his insurer for breach of contract and bad faith. The court grants summary judgment to the insurer. Because the standard commercial general liability (CGL) insurance policy at issue does not provide coverage for bad professional advice, we affirm.

Richard T. Ray (Ray) appeals from the summary judgment granted to respondent Valley Forge Insurance Company (Valley Forge). Ray asserts that Valley Forge had the duty to defend the complaint of the homeowners association.

## FACTS

Ray, a former roofing contractor, owns a professional roof consulting and inspection business, Ray Bros. Inspection and Consulting. The San Antonio Village Owners Association (Association) hired Ray to recommend, specify and approve reroofing materials for Association. The materials Ray specified and approved were not suitable because they caused upstairs units to become unbearably hot at times.

Association sued Ray for giving bad advice about the reroofing materials. Ray tendered defense to CNA Insurance Companies under his CGL insurance policy from Valley Forge. Valley Forge refused to defend because the policy does not cover the alleged professional malpractice. Ray defended and settled the Association suit and filed the instant complaint against Valley Forge for breach of the insurance contract and bad faith.

Valley Forge moved for summary judgment. The trial court found that the instant CGL policy does not provide coverage because the underlying action does not allege (1) tort liability, or (2) a covered occurrence, i.e., an accident. Association sued Ray for giving bad professional advice—such errors and omissions are not covered by the instant policy. Accordingly, the trial court granted summary judgment. This appeal ensued.

## DISCUSSION

██ We independently review motions for summary judgment. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766]; *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 486-487 [59 Cal.Rptr.2d 20, 926 P.2d 1114].) Summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) ██ Where undisputed facts establish that the policy does not cover a claim, the insurer will not be required to defend the action. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 298-299 [24 Cal.Rptr.2d 467, 861 P.2d 1153]; *Old Republic Ins. Co. v. Superior Court* (1998) 66 Cal.App.4th 128, 144 [77 Cal.Rptr.2d 642] [if insuring clause does not cover claimed loss, there is no coverage], disapproved on other grounds in *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 841, fn. 13 [88 Cal.Rptr.2d 366, 982 P.2d 229].)

██ The interpretation of an insurance policy presents a question of law for this court to decide. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].) ██ The duty of an

insurance company to defend a claim of coverage is broad. (*Montrose Chemical Corp. v. Superior Court, supra*, 6 Cal.4th at p. 295.) But an insurer has a duty to defend only if the facts disclosed to the insurer raise a potential that the lawsuit against its insured seeks damages within the scope of policy coverage. (*Ibid.*) We determine whether there is a potential for coverage by "comparing the allegations of the [underlying] complaint with the terms of the policy." (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792]; accord, *Waller, supra*, at p. 16.) The insurer's duty to defend is measured by the nature and kind of risks indemnified under the policy. (*Waller, supra*, at p. 19.) The insured has the burden to bring the claim within the basic scope of coverage; the insurer must establish the absence of such coverage. (*Id.*, at p. 16; *Montrose Chemical Corp., supra*, at pp. 295, 300.)

Courts do not engage in forced construction of insuring clauses to find coverage, nor will they strain to create an ambiguity where none exists. (*Waller v. Truck Ins. Exchange, Inc., supra*, 11 Cal.4th at pp. 16, 18-19; *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 866-867 [21 Cal.Rptr.2d 691, 855 P.2d 1263].) We read the words used in the policy according to the plain, ordinary, commonsense meaning a layperson would ascribe to them, and consider the intention of the parties as to what the contract covers. (Civ. Code, §§ 1636, 1648; *Vandenberg v. Superior Court, supra*, 21 Cal.4th at pp. 839-840; *Waller, supra*, at p. 18; *Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 666-667 [42 Cal.Rptr.2d 324, 897 P.2d 1]; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545].) A word in the policy is not considered ambiguous simply if is not defined in the policy. (*Bay Cities Paving & Grading, Inc., supra*, at pp. 866-867.) Courts may consider "interpretative literature" in construing standardized insurance policy provisions. (*Montrose Chemical Corp., supra*, at p. 670 et seq.) But if the language of the policy is clear and unambiguous, we do not consider extrinsic evidence. (*ACL Technologies, Inc. v. Northbrook Property & Casualty Ins. Co.* (1993) 17 Cal.App.4th 1773, 1790-1791 [22 Cal.Rptr.2d 206].)

*Allegations in the Underlying Complaint*

Association alleged that Ray "entered into a written agreement with [Association] pursuant to which [Ray] agreed to provide . . . specifications, recommendations, and approvals for suitable material . . . to be used in re-roofing the buildings in the Complex. [¶] . . . [I]n accordance with said agreement, [Ray] prepared specifications, recommendations and approvals

for the material to be used . . . . [¶] [Ray] negligently specified . . . the type of material to be used. [¶] . . . [T]he material specified . . . was not suitable . . . [because it] caused a substantial heat gain, making the buildings . . . uninhabitable during certain times of the year, all of which [Ray] knew, or . . . should have known . . . ."

Association alleged that Ray represented himself to be "a roofing consultant qualified to recommend, specify and approve material to be used in re-roofing the buildings in the Complex . . . and that the material it specified and approved was suitable for the buildings . . . . [¶] [Ray] had no reasonable ground for believing [such representations] to be true . . . ."

The gist of Association's allegations is that Ray is a professional roofing consultant who rendered bad advice in recommending and approving reroofing materials for the complex.

### The CGL Policy

The policy at issue is a standard CGL policy. It provides, in pertinent part, that Valley Forge "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages."

It states, "This insurance applies to . . . 'property damage' only if: [¶] (1) The . . . 'property damage' is caused by an 'occurrence' . . . ." The term "occurrence" is defined in the policy to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

### "Occurrence"

██ Ray argues that because continued exposure to the roofing material he recommended caused the elevated temperatures, Association's complaint describes an "occurrence" within the meaning of the policy. We disagree.

Under the policy, an occurrence requires "an accident." Although the term "accident" is not defined in the policy, courts have consistently defined the term to require unintentional acts or conduct. (*Collin v. American Empire Ins. Co.* (1994) 21 Cal.App.4th 787, 806 [26 Cal.Rptr.2d 391]; *Shell Oil Co. v. Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 750 [15 Cal.Rptr.2d 815]; *Merced Mutual Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41, 50 [261 Cal.Rptr. 273].) ██ The plain meaning of the word "accident" is an event

occurring unexpectedly or by chance. (*St. Paul Fire & Marine Ins. Co. v. Superior Court* (1984) 161 Cal.App.3d 1199, 1202 [208 Cal.Rptr. 5].)

"An accident . . . is never present when the insured performs a deliberate act . . . . [W]here the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an 'accident' merely because the insured did not intend to cause injury." (*Merced Mutual Ins. Co. v. Mendez, supra,* 213 Cal.App.3d at p. 50; accord, *Shell Oil Co. v. Winterthur Swiss Ins. Co., supra,* 12 Cal.App.4th at p. 750.)

 Association's complaint alleges that Ray acted deliberately as a professional consultant hired to provide advice. It alleges that Ray intended Association to use the materials he selected. The allegations state that Ray deliberately intended to induce reliance on his recommendations. (See *Walters v. Marler* (1978) 83 Cal.App.3d 1, 17, 19 [147 Cal.Rptr. 655], disapproved on other grounds in *Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 507 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763]; see also *Devin v. United Services Auto. Assn.* (1992) 6 Cal.App.4th 1149, 1158-1159 [8 Cal.Rptr.2d 263].) As such, Association's complaint does not allege tort liability covered by the CGL policy.

*Insurance Co. of North America v. Sam Harris Constr. Co.* (1978) 22 Cal.3d 409 [149 Cal.Rptr. 292, 583 P.2d 1335] is inapposite because the policy at issue there provided coverage for occurrences *or* accidents, not just occurrences as defined here. Moreover, the policy did not define "occurrences." *Crane v. State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112 [485 P.2d 1129, 48 A.L.R.3d 1089] is also inapposite because the policy in issue there contained exclusions and exceptions not at issue here.

### Completed Operations Coverage

Ray argues that the "completed operations" language in the policy required Valley Forge to defend. Ray refers to the definition of "your work" in the policy in conjunction with a general notice summarizing changes to CGL form policies. The policy at issue defines "your work" to include: "a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work;' and [¶] b. The providing of or failure to provide warnings or instructions."

The notice summarizing changes to the CGL form states, "This is a summary of the major changes found in the new editions of the Commercial General Liability Coverage Forms. NO COVERAGE IS PROVIDED BY THIS SUMMARY nor can it be construed to replace any provision of your policy.

You Should Read Your Policy and Review Your Declarations Page for complete information on the coverages you are provided. If there is any conflict between the policy and this summary, The Provisions of the Policy Shall Prevail." (Capitalization in original.)

The reference in the notice to products and completed operations language in the policy states only that "Products and Completed Operations Coverage Provisions have been revised to clarify original coverage intent to provide coverage *for failure to adequately warn* under the 'products/completed operations hazard.' (See Section 5 of your policy)" (Italics added.)

But Association did not allege that Ray failed to warn or should have warned of risks associated with the shingles he recommended. ■ In determining whether there is potential coverage, we are limited to reviewing the allegations and other facts known to the insurer at the time of tender. (See *Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 19; *Horace Mann Ins. Co. v. Barbara B., supra,* 4 Cal.4th at p. 1081; *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275 [54 Cal.Rptr. 104, 419 P.2d 168]; *Michaelian v. State Comp. Ins. Fund* (1996) 50 Cal.App.4th 1093, 1106 [58 Cal.Rptr.2d 133].)

■ Section 5 of the policy does not provide coverage; it only sets forth definitions. Furthermore, the term "your work" is contained only in exclusions to coverage that are not at issue in the summary judgment motion. Neither a policy exclusion nor a definition in a policy exclusion may create coverage. (*Stanford Ranch, Inc. v. Maryland Cas. Co.* (9th Cir. 1996) 89 F.3d 618, 627; accord, *Old Republic Ins. Co. v. Superior Court, supra,* 66 Cal.App.4th at p. 144.)

Ray confuses his status as the insured business on the declarations page with the coverage language of the policy. Under the policy, Ray and his wife are insured only against certain limited claims occurring when they conduct business. They are not covered for Ray's errors and omissions, as alleged here. (See *American Internat. Bank v. Fidelity & Deposit Co.* (1996) 49 Cal.App.4th 1558, 1574 [57 Cal.Rptr.2d 567].) CGL policies cover certain bodily injury and property damage claims resulting from accidental events, but not for errors and omissions when giving professional advice pursuant to a consulting contract. (Croskey et al., Cal. Practice·Guide: Insurance Litigation (The Rutter Group 1998) ¶¶ 7:2400-7:2403, p. 7k-1; *Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at pp. 17-18, 21; *American Internat. Bank, supra,* at p. 1574.)

### *Exclusions for Architects and Engineers*

Nonetheless, Ray argues that the policy covers him for the alleged errors and omissions because the only language in the policy excluding coverage

for professional services refers to the work of architects, engineers and surveyors. That language states that "[a]n 'insured contract' does not include that part of any contract or agreement: [¶] . . . [¶] b. That indemnifies an architect, engineer or surveyor for injury or damage arising out of: [¶] (1) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or [¶] (2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage . . . ."

 Insurance policy exclusions do not create coverage. "[I]f the insuring clause does not cover a claimed loss, then there is no coverage. [Citations.] In such a circumstance, there is no need to consider policy exclusions because exclusions serve to limit coverage granted by an insuring clause and thus apply only to hazards *covered* by the insuring clause. [Citation.] An exclusion cannot act as an additional grant or extension of coverage. [Citations.]" (*Old Republic Ins. Co. v. Superior Court, supra*, 66 Cal.App.4th at p. 144, italics in original; *Stanford Ranch, Inc. v. Maryland Cas. Co., supra*, 89 F.3d at p. 627.)

 Ray's reference to the definition of an "insured contract" applies to the contractual liability exclusion of the policy; it does not refer to coverage. (See generally *Alex Robertson Co. v. Imperial Casualty & Indemnity Co.* (1992) 8 Cal.App.4th 338, 343-344 [10 Cal.Rptr.2d 165]; *Loyola Marymount University v. Hartford Accident & Indemnity Co.* (1990) 219 Cal.App.3d 1217, 1225-1227 [271 Cal.Rptr. 528].) The instant policy provides limited coverage for damages resulting from accidents causing bodily injury or property damages; it does not cover damages due to errors or omissions in giving the instant professional advice.

### Negligent Misrepresentation and Breach of Contract Claims

Ray argues that because Association alleged negligent misrepresentation, the matter is founded in tort and the instant policy provides coverage. Ray is incorrect. "Coverage under a CGL insurance policy is not based upon the fortuity of the form of action chosen by the injured party." (*Vandenberg v. Superior Court, supra*, 21 Cal.4th at pp. 838, 840-841; *Stanford Ranch, Inc. v. Maryland Cas. Co., supra*, 89 F.3d at pp. 624-625; *Wilmington Liquid Bulk Terminals, Inc. v. Somerset Marine Inc.* (1997) 53 Cal.App.4th 186, 194, 197 [61 Cal.Rptr.2d 727], disapproved on other grounds by *Vandenberg, supra*, at p. 841, fn. 13.) As stated, *ante*, we consider the particular facts alleged and compare those allegations to the coverage provided in the policy. (*Vandenberg, supra*, at pp. 838-839.)

Association sued Ray for giving bad professional advice about reroofing materials. It is immaterial that Ray disclaimed knowledge about insulation

and did not proffer advice on it to Association. Valley Forge simply had no duty to defend against the allegations made here.

### Denial of Continuance for Further Discovery

■ Ray contends that the court erred in denying him a continuance to conduct further discovery regarding why CNA provided a defense to Craig Roofing, the company that reroofed the Association complex. He argues that such discovery might reveal how Valley Forge interpreted the policy.

Interpretation of coverage clauses by the carrier regarding another insured for distinct acts would be irrelevant to whether coverage exists here. (*Bareno v. Employers Life Ins. Co.* (1972) 7 Cal.3d 875, 881 [103 Cal.Rptr. 865, 500 P.2d 889].) Furthermore, if the salient policy provisions are unambiguous, as here, extrinsic evidence is inadmissible to construe them. (*ACL Technologies, Inc. v. Northbrook Property & Casualty Ins. Co., supra*, 17 Cal.App.4th at pp. 1790-1791.)

### Whether CNA Had Duty to Advise Ray to Obtain Other Coverage

■ Ray opines that CNA had the duty to advise Ray that CGL policies do not provide errors and omissions coverage. Parties to an insurance contract are bound to know all the material perils contemplated by it. (Ins. Code, § 335; *Rutherford v. Prudential Ins. Co.* (1965) 234 Cal.App.2d 719, 726-727 [44 Cal.Rptr. 697].) Insurance companies and brokers have no affirmative duty to advise their insureds to procure particular or different kinds of coverage than they obtained. (*Fitzpatrick v. Hayes* (1997) 57 Cal.App.4th 916, 927 [67 Cal.Rptr.2d 445]; *Jones v. Grewe* (1987) 189 Cal.App.3d 950, 954, 956 [234 Cal.Rptr. 717].)

The summary judgment is affirmed. Costs are awarded to respondent.

Yegan, J., and Coffee, J., concurred.

On January 27, 2000, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 22, 2000.