Michael D. McGRANAHAN, Chapter 7 Trustee, Plaintiff,

v.

The INSURANCE CORPORATION OF NEW YORK, Defendant.

No. CIV. S:07–65 FCD KJM.

United States District Court, E.D. California.

Feb. 13, 2008.

Chip Cox, John B. Hook, Long & Levit, LLP, San Francisco, CA, for Plaintiff.

W. Eric Blumhardt, Kimberly Marie Amick, Archer Norris, Walnut Creek, CA, for Defendant.

## MEMORANDUM AND ORDER

FRANK C. DAMRELL, JR., District Judge.

Plaintiff Michael D. McGranahan ("McGranahan" or "plaintiff") brings this action against defendant The Insurance Corporation of New York ("INSCORP" or "defendant") for breach of the duty to defend, breach of the duty to indemnify, breach of the covenant of good faith and fair dealing, and declaratory relief.[1] Plaintiff moves for partial summary judgment on his claims for breach of the duty to defend and breach of the duty to indemnify. Defendant moves for summary judgment on all of plaintiff's claims. For the reasons set for below, plaintiff's motion is GRANTED in part and DENIED in part, and defendant's motion is DENIED.

## BACKGROUND[2]

### A. *The Insurance Policy*

INSCORP issued a Commercial General Liability policy (the "policy") to Jeff Stewart Drywall, Inc. ("JSD") effective August 1, 1997. (DRUF ¶ 1.)[3] JSD renewed the

---

1. Because oral argument will not be of material assistance, the court orders these matters submitted on the briefs. E.D. Cal. L.R. 78–230(h).

2. Unless otherwise noted, the facts recited herein are undisputed. (Def.'s Resp. to Pl.'s Stmt. of Undisputed Facts ("DRUF"), filed Jan. 25, 2008; Pl.'s Resp. to Def.'s Stmt. of Undisputed Facts ("PRUF"), filed Jan. 25, 2008.) Where the facts are disputed, the court recounts both parties versions of the

facts. (Pl.'s Stmt. of Undisputed Facts ("PUF"), filed Jan. 11, 2008; Def.'s Stmt. of Undisputed Facts ("DUF"), filed Jan. 12, 2008.)

3. The court notes that INSCORP filed various objections to plaintiff's evidence. Except as noted herein, the court finds INSCORP's objections irrelevant to the motion, as the court does not rely upon the subject evidence in rendering its decision, or otherwise without merit.

policy each year such that it was effective between August 1, 2002, and August 1, 2003. (PRUF ¶ 1.)

The policy provided that INSCORP would defend and indemnify JSD against any suit seeking damages for property damage caused by an "occurrence." (PRUF ¶ 2.) The policy defined an occurrence as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." (PRUF ¶ 3.)

The policy also contained a number of exclusions from coverage. First, the policy excluded coverage for property damage "expected or intended from the standpoint of the insured." (PRUF ¶ 5.) Second, the policy excluded coverage for property damage to the insured's work and work product. (PRUF ¶ 6.) Specifically, the policy excluded property damage to "that particular part of the real property" on which the insured worked and "that particular part of the property that must be restored, repaired or replaced" because the insured incorrectly performed work on it. (PRUF ¶ 6.)

## B. *The Wisteria Project*

On or about May 16, 2002, JSD entered into a subcontract with Dunmore Homes ("Dunmore") for the installation of drywall at the Wisteria subdivision in Ceres, California. (PRUF ¶ 7.) JSD installed drywall in homes in the Wisteria subdivision between December 2002 and January 2003. (DRUF ¶ 9.) During this time, the weather in Ceres was frequently cold, damp, and foggy, with occasional drizzling rain. (DRUF ¶ 9.)

JSD alleges that the drywall was delivered to each home site where it was stacked and covered with a plastic tarp until installation. (PUF ¶ 10.) JSD maintains that before it could install the drywall in several homes, some of the sheets of drywall became wet. (PUF ¶ 10.) JSD

asserts that it culled or replaced these sheets with additional drywall. (PUF ¶ 10.)

After the drywall was installed, JSD's work was inspected and approved. (DRUF ¶ 11.) Thereafter, mold was identified on some of the drywall installed in some of the homes. (DRUF ¶ 12.) With the approval of Andy Chipponeri ("Chipponeri"), the General Superintendent for the Wisteria subdivision, JSD attempted to repair the damage by treating the moldy drywall with bleach. (DRUF ¶ 12.)

On April 9, 2003, Dunmore directed a letter to JSD and the Insurance Center of Central California, alleging JSD breached the contract:

> Dunmore has received claims that nearly a dozen homes involved in the project may have sustained mold damage because sheet rock hung in those homes by [JSD] may have had visible mold on the sheet rock at the time of installation.

(PRUF ¶¶ 9–10.)

On October 23, 2004, INSCORP's claim adjuster, Neville Duvall ("Duvall"), contacted counsel for Dunmore Homes, Larry Wengel ("Wengel"), about the allegations. (PRUF ¶ 12.) In his claims file notes, Duvall wrote:

> Of the many things discussed "sudden and accidental" is not the understanding of what took place. It appears the allegations facing the insure[d] are that the insured hung rock that had been lying around open in the rain and statements to the effect of when some of the panels where [sic] hung they were previously exposed to damp mold covered corners and the ones that were acknowledged to have mold growing were wiped down with water and bleach and then hung in place to dry out[.]

(PRUF ¶ 12.)

Dunmore subsequently provided JSD and INSCORP with reports from the En-

vironmental Consultants Group ("ECG") describing the results of testing performed on homes in the subdivision. (DRUF ¶ 3.) The ECG reported:

> Prior to hanging the drywall had been stored in bulk inside the building as is common in new construction. Unfortunately, a storm moved the plastic tarps off the drywall stacks. Rain reached a portion of the drywall, and ultimately, a large portion of the drywall formed mold. The worst of the drywall was culled, but the vast majority was used. Mold growth was present on many of the drywall panels. In response, the exposed surface of all walls and ceilings were sprayed with bleach prior to texturing and painting.

(PRUF ¶ 13.) For homes contaminated with mold, the ECG recommended that a mold remediation firm remove the drywall; remove and clean fixtures, such as cabinets, tubs, toilets, and light fixtures; remove exposed insulation; clean HVAC duct work; and clean residual traces of the mold from the structure, including traces on floors, walls, ceiling, and ledges. (Def.'s Ex. F, filed Jan. 12, 2008.)

### C. *The Arbitration*

On or about August 27, 2003, Dunmore initiated binding arbitration proceedings against JSD, alleging a single claim for breach of contract:

> [JSD] utilized mold-contaminated sheet rock in multiple homes in the Wisteria subdivison, Ceres, California, in performance of its Subcontract Agreement with Dunmore Homes, LLC. Dunmore has had to test the homes in question and remove and remediate mold contamination in multiple homes, to its damage. The performance of [JSD] was in breach of the Subcontract Agreement obligations of [JSD], and has proximately damaged Dunmore Homes, LLC.

(PRUF ¶¶ 14–15.) INSCORP denied coverage for this claim against JSD on Janu-

ary 2, 2004. (PRUF ¶ 17.) On January 19, 2004, JSD answered Dunmore's Demand for Arbitration, asserting a counterclaim and several affirmative defenses. (PRUF ¶ 16.)

On February 23, 2004, counsel for JSD, Larry Niermeyer ("Niermeyer") wrote INSCORP's claim adjuster, HDR Insurance Services, and asked if it would reconsider coverage if he submitted affidavits and receipts for the purchase of replacement drywall. (PRUF ¶ 18.) The letter stated that "Mr. Stewart has always maintained that he never used and/or installed drywall that was contaminated with mold, damaged, or deteriorated." (Def.'s Ex. J, filed Jan. 12, 2008.) JSD faxed receipts for the replacement drywall and the Declaration of Chipponeri to INSCORP's claims adjuster on February 25, 2004. (PRUF ¶ 19.)

In his declaration, Chipponeri stated, "At no time did I ever see [JSD] install and/or use drywall on the Wisteria Development that was contaminated with mold, damaged or deteriorated in any manner." (Def.'s Ex. J.) Chipponeri also denied ever seeing any evidence that suggested JSD was installing moldy, damaged, or deteriorated drywall. (Def.'s Ex. J.) However, Chipponeri noted "the presence of mold on a select few sheets of drywall was brought to my attention." (Def.'s Ex. J.) He attributed the mold to the fact "the home in which [the drywall] was located was not moisture secure." (Def.'s Ex. J.) Chipponeri admitted approving the treatment of these sheets of drywall with bleach. (Def.'s Ex. J.)

The arbitration between Dunmore and JSD occurred in March of 2004. (PRUF ¶ 21.) The arbitrator found that JSD was on notice of the mold problem when it received a letter dated February 13, 2003, from a homeowner, indicating she observed mold on the drywall while it was stacked as well as after it was installed.

(PRUF ¶ 25.) The arbitrator determined that the decision thereafter to apply bleach to the moldy drywall was insufficient, which "should have been apparent to both [Dunmore] and [JSD]." (PRUF ¶¶ 26–27.) The arbitrator awarded Dunmore damages in the amount of $183,646.85.[4] (PRUF ¶ 29.) Judgment in this amount was entered against JSD on or about July 27, 2004. (PRUF ¶ 29.)

## D. *The Instant Action*

In April 2005, JSD filed for bankruptcy under Chapter 7 of the United State Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of California. Thereafter, McGranahan was appointed Chapter 7 Trustee for the bankruptcy estate of JSD. McGranahan filed a complaint against INSCORP on April 10, 2006, for breach of the duty to defend, breach of the duty to indemnify, declaratory relief, and breach of the implied covenant of good faith and fair dealing.

On January 10, 2007, McGranahan moved to withdraw the proceedings before the bankruptcy court. The motion was granted on February 2, 2007, and the case was transferred to this court. Both McGranahan and INSCORP now move for summary judgment.

## STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

When parties submit cross-motions for summary judgment, the court must review the evidence submitted in support of *each* cross-motion and consider each party's motion on its own merits. *Fair Housing Council of Riverside County, Inc. v. Riverside Two,* 249 F.3d 1132, 1136 (9th Cir. 2001). The court must examine each set of evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Ze-*

---

**4.** The arbitrator found JSD liable for damages totaling $350,584.68. (Def.'s Ex. L, filed Jan. 12, 2008.) However, the arbitrator reduced this award to $131,710 based on Dunmore's withholding of money due JSD under the contract. (Def.'s Ex. L.) The arbitrator then added fees and costs for a total award to Dunmore of $183,646.85. (Def.'s Ex. L.)

*nith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The evidence presented by the parties must be admissible. Fed.R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49, 57 (2d Cir.1985); *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).

## ANALYSIS[5]

### A. *Duty to Defend*

A liability insurer owes a broad duty to defend its insured against a claim that *"potentially* seeks damages within the coverage of the insurance policy." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993) (citing *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 419 P.2d 168 (1966)) (emphasis in original). Implicit in this rule is the principle that a duty may exist "even where coverage is in doubt and ultimately does not develop." *Montrose Chem. Corp. Of Cal. v.Super. Ct.*, 6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993) (citation omitted).

The insured bears the initial burden of showing a potential for coverage, while the insurer must prove the absence of any such potential. *Id.* at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153. The insurer's duty is determined by comparing the allegations in the complaint with the terms of the policy. *Horace*, 4 Cal.4th at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792. A duty to defend may also exist if facts extrinsic to the complaint give rise to a possibility that the claim may be covered by the policy. *Id.*

The duty to defend continues until the underlying lawsuit is concluded or until it has been shown that there is no potential for coverage. *Montrose*, 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153. Any doubt as to whether the insurer has a duty to defend is resolved in the insured's favor. *Horace*, 4 Cal.4th at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792. Facts merely tending to show a claim is not covered will not defeat the insurer's duty to defend. *Montrose*, 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153.

### 1. Coverage for "occurrence"

JSD contends that the breach of contract claim filed by Dunmore was at least potentially covered by the INSCORP insurance policy because the mold contamination resulted from an accident. Conversely, INSCORP argues that there was no potential for coverage under the policy because JSD intentionally installed wet/moldy drywall.

An insurer has a duty to defend where a factual dispute exists over the scope of coverage. *Montrose Chem. Corp. of Cal. v. Super. Ct.*, 6 Cal.4th 287, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993).[6] In *Montrose*, a pesticide manufacturer sued his insurance company seeking a declara-

5. All further references to the parties are to "JSD" and "INSCORP," with the understanding that McGranahan is acting as trustee for JSD's estate.

6. INSCORP contends the present action sounds in contract not tort; therefore, reliance on tort cases is inappropriate. However, the California Supreme Court has expressly refused to draw a distinction between contract actions and tort actions for purposes of determining the scope of insurance coverage. *See Vandenberg v. Super. Ct.*, 21 Cal.4th 815, 840, 88 Cal.Rptr.2d 366, 982 P.2d 229 (1999) ("[T]he arbitrariness of the distinction between contract and tort ... is evident when we consider the same act may constitute both a breach of contract and a tort. Predicating coverage upon an injured party's choice of remedy or the form of action sought is not the law in this state.") (citation omitted).

tion that the insurer had a duty to defend in an underlying CERCLA action. *Id.* at 292, 24 Cal.Rptr.2d 467, 861 P.2d 1153. The CERCLA complaint alleged that the manufacturer's operation of its facility caused environmental contamination. *Id.* In opposing the manufacturer's motion for summary judgment, the insurer argued that extrinsic evidence "raised a triable issue of fact" as to whether the manufacturer had intentionally caused the contamination, and, thus, it had no duty to defend. *Id.* at 294, 24 Cal.Rptr.2d 467, 861 P.2d 1153. The California Supreme Court held that a factual dispute as to the scope of coverage could not defeat the potential for coverage and eliminate the duty to defend. *Id.* at 304, 24 Cal.Rptr.2d 467, 861 P.2d 1153. The court reasoned that the "neutral" allegations of the CERCLA complaint "sufficed to raise the possibility that [the manufacturer] would be liable for property damage covered by the policies." *Id.* Extrinsic evidence that disputed the manufacturer's conduct was negligent "did not eliminate that possibility." *Id.* Therefore, the insurer had a duty to defend the manufacturer in the underlying CERCLA action. *Id.*

■ The facts in *Montrose* are analogous to the facts of this case. The underlying arbitration complaint alleged that JSD "utilized mold-contaminated sheet rock" in the homes of the Wisteria subdivision. (PRUF ¶ 15.) The complaint did not indicate whether JSD intentionally or negligently utilized the mold-contaminated sheet rock. (PRUF ¶ 15.) The complaint is thus like the "neutral" complaint that gave rise to a duty to defend in *Montrose.* The potential for coverage exists in both cases because the terms of the policies cover "accidents."

INSCORP asserts that there was sufficient evidence to suggest that JSD had intentionally installed wet or moldy drywall and thus eliminate the potential for coverage.[7] Wengel told an INSCORP claim adjuster that Dunmore's understanding of the case was that JSD installed wet and moldy drywall. (PRUF ¶ 12.) Chipponeri also admitted that mold growth was brought to his attention in at least one of the homes after installation. (Def.'s Ex. J.) In addition, one homeowner in the Wisteria subdivision observed mold on the drywall while it was stacked and after it was hung.[8] (PRUF ¶ 25.) As set forth by the California Supreme Court in *Montrose,* however, these factual issues "merely place[ ] in dispute whether [the insured's] actions [will] eventually be determined not to constitute an occurrence or to fall within one or more of the exclusions contained in the polic[y]." 6 Cal.4th at 304, 24 Cal. Rptr.2d 467, 861 P.2d 1153. So long as the

---

7. INSCORP asserts the arbitrator determined JSD was aware the sheet rock was wet or moldy prior to installation. This misstates the arbitrator's award. (Def.'s Ex. L ("Whether the sheetrock was wet or moist before hanging, even though visible signs of mold might not be present, does not really matter.... [U]nder the terms of the contract, [JSD] is responsible for the mold on the sheetrock.").) Even if the arbitrator had determined JSD was aware of the mold, INSCORP cannot rely on the arbitrator's award to support its refusal to defend JSD. *Montrose,* 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 ("For an insurer, the duty to defend turns not upon the ultimate adjudication of

coverage under its policy, but upon those facts known by the insurer at the inception of the third party lawsuit.").

8. It is unclear from the parties' submissions whether INSCORP was aware of this fact prior to the arbitrator's award. *See Montrose,* 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 ("For an insurer, the duty to defend turns not upon the ultimate adjudication of coverage under its policy, but upon those facts known by the insurer at the inception of the third party lawsuit."). Consideration of this fact, however, does not prejudice plaintiff as it is not sufficient to eliminate the potential for coverage.

possibility of a judgement based on non-intentional conduct existed, there was a potential for coverage giving rise to IN-SCORP's duty to defend.

The extrinsic evidence known to IN-SCORP from the time it was first notified of the claim until the time of arbitration did not definitively eliminate the possibility of coverage. Any inference that JSD had intentionally installed moldy drywall was firmly opposed by the letter sent from Niermeyer, JSD's counsel, to INSCORP's claim adjuster prior to arbitration. The letter expressly stated, "Mr. Stewart has always maintained that he never used and/or installed drywall that was contaminated with mold, damaged, or deteriorated." (Def.'s Ex. J.) The attached Chipponeri declaration appeared to confirm this assertion by denying any evidence of moldy, damaged, or deteriorated drywall installation in the Wisteria subdivision. (Def.'s Ex. J.) Thus, the undisputed facts demonstrate that there was a potential for coverage under the policy and that IN-SCORP had a duty to defend JSD in the underlying arbitration.

INSCORP relies on *Merced Mutual Insurance Company v. Mendez*, 213 Cal. App.3d 41, 261 Cal.Rptr. 273 (1989), to argue that no potential for liability existed because deliberate acts, despite their unintentional harm, can never qualify as "accidental." Defendant's reliance is misplaced. The principles set forth in *Merced Mutual* support the court's holding that there was the potential for coverage. The

*Merced Mutual* court provided an example of the distinction between intentional and negligent conduct:

> When a driver intentionally speeds and, as a result, negligently hits another car, the speeding would be an intentional act. However, the act directly responsible for the injury—hitting the other car—was not intended by the driver and was fortuitous. Accordingly, the occurrence resulting in injury would be deemed an accident. On the other hand, where the driver was speeding and deliberately hit the other car, the act directly responsible for the injury—hitting the other car—would be intentional and any resulting injury would be directly caused by the driver's intentional act.

*Id.*

Applying these principles to this case, the question is not whether JSD intended to hang sheet rock. Rather, the question is whether JSD intended the cause of the damage to the Wisteria homes, that is, the hanging of wet or moldy sheet rock. As set forth above, the allegations and extrinsic evidence on this point are conflicting, giving rise to a duty to defend on the part of INSCORP until it was either determined that no potential for liability existed or the arbitration reached a conclusion.[9]

## 2. Exclusion for "your work"

■ INSCORP also argues no potential for coverage existed because the damage to the homes in the Wisteria subdivision fell within the "your work"[10] exclusion for

---

**9.** INSCORP's reliance on *Ray v. Valley Forge Insurance Company*, 77 Cal.App.4th 1039, 92 Cal.Rptr.2d 473 (1999), is similarly unpersuasive. In *Ray*, the court held a roofing consultant's advice to install unsuitable materials was not an accident merely because the consultant did not intend the resulting harm. *Id.* at 1046, 92 Cal.Rptr.2d 473. The court reasoned the consultant intended to give professional advice and intended his client to use the materials he recommended. *Id.* In con-

trast, while JSD clearly intended to install the drywall, the evidence is conflicting regarding whether JSD intended to install wet or moldy drywall. Thus, unlike in *Ray*, JSD's conduct is not clearly outside the scope of the insurance policy.

**10.** "Your work" refers to "[w]ork or operations performed by [the insured]" and "[m]aterials, parts or equipment furnished in con-

damage to "that particular part of the property" on which JSD worked. (PRUF ¶ 6.) JSD does not dispute the policy excluded coverage for damage to the drywall. (*See* Pl.'s P. & A. in Supp. of Mot. for Partial Summ. J. ("Pl's P. & A.") 11:13–17, filed Jan. 11, 2008.) However, JSD contends that Dunmore sought damages not just for the drywall itself, but also for other parts of the property damaged by the drywall. (Pl.'s P. & A. 12:6–8.)

The California Court of Appeal has narrowly construed "your work" exclusions in insurance policies. *Roger H. Proulx & Co. v. Crest–Liners, Inc.*, 98 Cal.App.4th 182, 119 Cal.Rptr.2d 442 (2002). In *Crest–Liners*, the insured had negligently installed a waterproof liner for an air conditioning tank. *Id.* at 189, 119 Cal.Rptr.2d 442. The insurer moved for summary judgment on the grounds that the alleged property damage fell within an exclusion for property damage to "[t]hat particular part of real property on which [the insured] ... [is] performing operation if the 'property damage' arises out of those operations." *Id.* at 202, 119 Cal.Rptr.2d 442. The court concluded that the exclusion could not form the basis for summary judgment because the insurer failed to show all of the damage suffered was to the tank liner. *Id.* at 202–03, 119 Cal.Rptr.2d 442. In fact, "the evidence before the trial court indicated that at least some of the damage at issue involved property other than the tank liner[.]" *Id.* at 203, 119 Cal.Rptr.2d 442.

The evidence before the court indicates that some of the damage alleged by Dunmore was to property other than the drywall in the Wisteria homes. (*See* Pl.'s Ex. E, filed Jan. 11, 2008; Def.'s Ex. F.) For example, the ECG reports recommend mold remediation work to the cabinets, light fixtures, floors, tubs, and ceilings, among others. (Def.'s Ex. F.) JSD has also proffered alleged receipts for the work, indicating damages to portions of the homes other than the drywall.[11] (Pl.'s Ex. E.)

Further, INSCORP has provided no evidence to show that all of the damage Dunmore sought to recover was to the "particular part of the property" on which JSD performed work. It is INSCORP's burden to show that a policy exclusion applies. Absent production of evidence to support its assertion, and in the face of evidence to the contrary, the court cannot grant summary judgment in favor of INSCORP. INSCORP failed to demonstrate that there is no potential for coverage such that it had no duty to defend JSD in the arbitration.

### 3. Exclusion for work not completed

■ Finally, INSCORP argues that no potential for coverage existed because the policy expired before JSD "completed" the work. It is undisputed that JSD's work passed inspection sometime between January and February of 2003. (DRUF ¶¶ 11–12.) It is also undisputed that homeowners were unable to move into the Wisteria subdivision until remediation was completed on August 21, 2003. (PRUF ¶ 28.) Thus, INSCORP raises an issue of interpretation as to whether the work was "completed" before the policy expired on August 1, 2003.[12]

---

nection with such work or operations." (PRUF ¶ 6.)

11. INSCORP objects to this evidence on the grounds that it is irrelevant, lacks foundation, and reflects estimates of the damage as opposed to receipts. The evidence is relevant to determining whether the "your work" policy exclusion applies. If all the damages sought by Dunmore were for damage to the drywall

alone, JSD concedes that it would have no claim for defense or indemnity. Whether the documents are characterized receipts or estimates, they are evidence that Dunmore's damages included damage to property other than the drywall.

12. INSCORP argues the arbitrator in the underlying action found the "homes were not 'completed' until August 21, 2003." This mis-

The interpretation of an insurance policy presents a question of law for this court to decide.[13] *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18–19, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995). The court interprets the words used in the policy according to the plain meaning an ordinary person would ascribe to them. *Id.* at 18, 44 Cal.Rptr.2d 370, 900 P.2d 619.

In this case, the policy excludes coverage for "that particular part of the property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." (PRUF ¶ 6.) "Your work" refers to the materials supplied and operations performed by the insured. (PRUF ¶ 6.) The policy sets forth an exception to this exclusion, however, for "all 'property damage' occurring away from premises you own or rent and arising out of 'your product'[14] or 'your work.'" (PRUF ¶ 6.) This exception only applies to work that has been completed. Work is deemed completed at the "earliest" of "[w]hen all the work called for in [the] contract has been completed" or "[w]hen that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project." (PRUF ¶ 6.) "Work that may need service, maintenance, correction, repair or replacement, but which is other-wise complete, will be treated as completed." (PRUF ¶ 6.)

Reading these provisions in conjunction, and giving them their plain meaning, the policy permits coverage for all property damage arising out of the insured's work (except for the part of the property on which the insured performed work) if the work was completed. Work is completed at the *earliest* of either finishing all the work required by the contract or when the property on which the insured worked is put to its intended use. Work that is otherwise complete is not deemed incomplete merely because it requires correction or replacement.

Applying this interpretation to the undisputed facts, the court holds that the policy covers damage to portions of the Wisteria homes other than the drywall because JSD had completed all the work required by the contract once the drywall was inspected and approved by Dunmore homes in January or February 2003. While INSCORP argues that the work was not "completed" until the homes were put to their intended use in August 2003, the policy clearly deems work completed if all the work required under the contract is finished prior to that time. The fact that JSD later returned to the job site to remediate the mold does not alter the analysis. As INSCORP states in its brief,

states the arbitrator's award. The arbitrator found that "remediation was performed and on August 21, 2003, ECG confirmed that the mold had been removed." (Award of Arbitration, Def.'s Ex. L, at 3.) The arbitrator did not make a determination of whether JSD's work was completed on that date for purposes of coverage under the policy. (Def.'s Ex. L.)

13. In its reply to INSCORP's Response to Plaintiff's Statement of Undisputed Facts, JSD concedes that it had not completed its contractual obligations when the drywall passed inspection. This concession, however, does not affect the court's analysis because

the interpretation of an insurance contract is a question of law for the court to decide. Further, it is unclear whether JSD's concession refers to completion of the project for purposes of the insurance policy or for purposes of the contract with Dunmore.

14. "Your product" refers to "[a]ny goods or products ... manufactured, sold, handled, distributed or disposed of by [t]he insured" and "[c]ontainers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products." (Def.'s Ex. A, filed Jan. 12, 2008.)

JSD took such measures to "remediate and correct the problem" after January/February 2003. (Def.'s P. & A. 20:4.) Work requiring correction or replacement is still deemed "completed" under the terms of the policy. Therefore, JSD's claim is not subject to the exclusion for work not completed.

Thus, because the undisputed facts demonstrate that there was the potential for coverage under the policy, and because defendant cannot demonstrate that an exclusion to coverage applies as a matter of law, defendant's motion for summary judgment regarding plaintiff's claim for breach of the duty to defend is DENIED, and plaintiff's motion for summary judgment is GRANTED.[15]

### B. *Duty to Indemnify*[16]

■ Unlike the duty to defend, a liability insurer owes a duty to indemnify only where a judgment has been entered against the insured on a claim that is actually covered by the policy. *Buss v. Super. Ct.,* 16 Cal.4th 35, 45–46, 65 Cal. Rptr.2d 366, 939 P.2d 766 (1997). An insurer that is notified of an action and refuses to defend is bound by the judgment in the action as to all material findings of fact essential to the judgment. *Geddes & Smith, Inc. v. Saint Paul Mercury Indem. Co.,* 51 Cal.2d 558, 561, 334 P.2d 881 (1959). However, an insurer is not bound by issues not adjudicated in the prior action and can present defenses to the extent they are consistent with the judgment against the insured. *Id.* at 561–62, 334 P.2d 881.

There is no dispute among the parties that the arbitrator did not address whether JSD intentionally installed moldy drywall. (DRUF ¶ 15.) Therefore, INSCORP is not bound by any findings of fact or determinations of law with respect to the scope of insurance coverage.

INSCORP denies owing JSD a duty to indemnify on the grounds that (1) the installation of the drywall was not an "occurrence" within the terms of the policy; and (2) the policy exclusion for "your work" applies to the damages sought by Dunmore in arbitration.[17] As set forth above, there are triable issues of fact regarding whether JSD's conduct fell within the scope of policy coverage. JSD argues that it never intentionally installed wet or moldy drywall, as demonstrated by the neutral Demand for Arbitration and Niermeyer's letter to INSCORP's claims adjuster. INSCORP contends that Wengel informed its claims adjuster that JSD had intentionally installed moldy drywall, Chipponeri admitted that mold growth was brought to attention in at least one home, and a homeowner wrote JSD indicating she observed mold on the drywall both before and after installation. Based upon the conflicting evidence provided by the parties, this issue cannot be resolved on summary judgment. Moreover, as set for above, INSCORP has

---

**15.** The parties dispute JSD's damages for breach of the duty to defend. JSD claims it sufferd $39,482.62 in defense costs to defend the arbitration. (PUF ¶ 16.) INSCORP asserts the bills provided by JSD include other matters, including Jeff Stewart's divorce. (DRUF ¶ 16.) This dispute cannot be resolved on a motion for summary judgment and is therefore reserved for resolution at trial.

**16.** INSCORP argues that JSD's claim for breach of the duty to indemnify is unfounded because INSCORP paid the arbitration judgment rendered against JSD. However, INSCORP proffers no evidence to support this assertion. As the moving party, INSCORP bears the initial burden of showing summary judgment is appropriate. INSCORP has not met its burden.

**17.** INSCORP also contends that JSD did not "complete" the work for purposes of coverage under the policy. As set forth above, the court holds that the work was completed for purposes of policy coverage in January or February 2003.

failed to meet its burden of establishing that the "your work" exception covered all the damages sought by Dunmore in the underlying arbitration.

Because triable issues of fact exist regarding whether JSD acted with intent in installing drywall exposed to mold, and whether an exception covered all damages in the arbitration, both plaintiff's and defendant's motion for summary judgment as to this claim are DENIED.

### C. Bad Faith

■ INSCORP moves for summary judgment on JSD's claim for breach of the implied covenant of good faith and fair dealing on the grounds that it is barred by a two-year statute of limitations. INSCORP asserts the statute of limitations began running on January 2, 2004, when INSCORP denied JSD's claim for defense, and thus because this action was filed on April 10, 2006, the claim is barred. The court disagrees.

■ The statute of limitations for a breach of the duty to defend a claim is equitably tolled until final judgment. *Lambert v. Commonwealth Land Title Ins. Co.,* 53 Cal.3d 1072, 1080, 282 Cal. Rptr. 445, 811 P.2d 737 (1991). In *Lambert,* an insured sued his title insurer after it denied coverage and refused to defend the insured in an underlying suit. 53 Cal.3d at 1075, 282 Cal.Rptr. 445, 811 P.2d 737. The court held that the plaintiff's suit was not barred by the two-year statute of limitations. *Id.* at 1080, 282 Cal. Rptr. 445, 811 P.2d 737. The court reasoned that "[b]ecause the underlying litigation may take over two years, ... the statute of limitations on a lawsuit to vindicate the duty to defend [would run] even before the duty to defend itself expires." *Id.* at 1077, 282 Cal.Rptr. 445, 811 P.2d 737. The court stated that where a continuing duty is breached, the plaintiff "must be allowed the *option"* of filing suit

when the time for complete performance has passed. *Id.*

Similarly, in *Archdale v. American International Specialty Lines Insurance Company,* 154 Cal.App.4th 449, 64 Cal. Rptr.3d 632 (2007), a tort claimant filed suit against a tortfeasor's insurer for breach of the implied covenant of good faith and fair dealing. 154 Cal.App.4th at 458, 64 Cal.Rptr.3d 632. The insurer had refused to accept a reasonable settlement offer in an underlying personal injury lawsuit. *Id.* at 458–59, 64 Cal.Rptr.3d 632. Relying on *Lambert,* the Court of Appeal held that the statute of limitations was tolled until final judgment was entered. The court reasoned that while the insured's cause of action may have accrued when the insurer refused the settlement offer, the resulting damages could not be certain until the judgment was final. *Id.* at 478, 64 Cal.Rptr.3d 632.

The court holds that the two-year statute of limitations for JSD's claim for bad faith and fair dealing was equitably tolled until entry of final judgment. JSD's claim for bad faith rests in part on INSCORP's wrongful breach of its duty to defend JSD in the underlying arbitration. As noted above, the duty to defend continues until the underlying suit is concluded or the potential for coverage is eliminated. A cause of action thus accrued not only upon INSCORP's initial refusal to defend JSD, but also each day INSCORP continued to refuse to defend JSD. In such circumstances, it is illogical and inequitable to require JSD to file an action for bad faith against INSCORP in the midst of litigating the underlying judgment that will serve as the basis for its claim of damages.

To the extent JSD's claim for bad faith is premised on breach of the duty to indemnify, INSCORP may have denied coverage in January 2004, but breach of the duty did not occur until final judgment was

entered in July 2004. *See Certain Underwriters at Lloyd's of London v.Super. Ct.,* 24 Cal.4th 945, 958, 103 Cal.Rptr.2d 672, 16 P.3d 94 (2001) ("[T]he duty to indemnify can arise only after damages are fixed in their amount[.]"). Therefore, plaintiff's claim for bad faith premised upon breach of that duty also did not occur until July 2004.

Based on the foregoing, INSCORP's motion for summary judgment on this claim is DENIED.

## CONCLUSION

1.  Regarding plaintiff's claim for breach of the duty to defend:

    A.  Plaintiff's motion for summary judgment is GRANTED.

    B.  Defendant's motion for summary judgment is DENIED.

2.  Regarding plaintiff's claim for breach of the duty to indemnify:

    A.  Plaintiff's motion for summary judgment is DENIED.

    B.  Defendant's motion for summary judgment is DENIED.

3.  Regarding plaintiff's claim for breach of the covenant of good faith and fair dealing, defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.